## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAMS-BURCH, LLC,<br>1901 Stanford Court<br>Landover, Maryland 20785<br><br>       Plaintiff,<br>  vs.<br><br>DBGA LLC<br>400 Massachusetts Avenue NW, #1219<br>Washington, D.C. 20001<br><br>ILYA ALTER<br>400 Massachusetts Avenue NW, #1219<br>Washington, D.C. 20001<br><br>DIMITRI CHEKALDIN<br>1400 Church Street NW, Unit 311<br>Washington, D.C. 20005<br><br>      Defendants. | CIVIL CASE NO. **19-cv-1662**<br>_____<br><br><br>**COMPLAINT** |

COMES NOW, Plaintiff, Adams-Burch, LLC with its Complaint ("Complaint") against the Defendants DBGA, LLC ("DBGA"), Ilya Alter ("Alter"), and Dimitri Chekaldin ("Chekaldin"), (collectively, the "Defendants") on the following grounds:

### I.  NATURE OF THE CLAIMS

1.  This action arises from Defendants' failure to satisfy their obligation to pay Adams-Burch for hundreds of thousands of dollars in foodservice equipment and restaurant accoutrements, which Defendants' fraudulently induced Adams-Burch to provide despite having no intent to pay.  Defendants entered agreements and issued fraudulent bank authorizations as part of a conspiracy to gain Adams-Burch's trust in delivering these very expensive and specialized products and services.  At present, Defendants are operating at least two foodservice

establishments using equipment, small wares, flat wares, and table top wares misappropriated from Adams-Burch.  As a result of the Defendants' wrongful actions, inactions, and misrepresentations, Adams-Burch has sustained significant and substantial damages.

## II.     PARTIES

2.     Plaintiff Adams-Burch, LLC, is a Delaware limited liability company with its principal place of business located at 1901 Stanford Court, Landover, Maryland 20785.

3.     Defendant DBGA LLC is a Washington, District of Columbia, limited liability company with its principal place of business at 400 Massachusetts Ave., NW #1219, Washington, District of Columbia 20001.  DBGA can be served through its registered agent, Ilya Alter at 400 Massachusetts Ave., NW #1219, Washington, District of Columbia 20001.

4.     Defendant Ilya Alter is an individual residing in the District of Columbia at 400 Massachusetts Ave., NW #1219, Washington, District of Columbia 20001.  Mr. Alter is a governor and executing officer of DBGA.

5.     Defendant Dimitri Chekaldin is an individual residing in the District of Columbia at 1400 Church Street NW, Unit: 311, Washington, District of Columbia 20005.  Mr. Chekaldin is a governor and executing officer of DBGA.

## III.     JURISDICTION AND VENUE

6.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

7.     Upon information and belief, Defendant DBGA is a corporation formed, existing, and located in the District of Columbia and it has no members who are citizens or residents of the State of Maryland.

8.     Upon information and belief, Defendants Alter and Chekaldin are residents of the District of Columbia and do not reside in the State of Maryland.

2

9.     Adams-Burch is Delaware limited liability company with its principal place of business in the State of Maryland.  It has no offices in the District of Columbia and no members who are citizens or residents of the District of Columbia.

10.     This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because it is between citizens of different States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

11.     Venue is proper in this Court under 28 U.S.C. 5§§ 1391(a) and 1391(b) because a substantial part of the events and omissions material to Plaintiff's causes of action occurred in this District, the property that is the subject of the action is situated in this District, and all Defendants are subject to personal jurisdiction in this District at the time this action is commenced.

## IV.    FACTS

12.     On November 14, 2016, Alter and Chekaldin registered DBGA as a limited liability company for the purpose of opening several foodservice and drinking establishments under the "Dacha" trade name, including the Dacha Navy Yard and Dacha Beer Garden (the "Dacha Establishments").

13.     To open, run, and operate those establishments, Alter and Chekaldin needed to acquire large scale foodservice equipment, such as walk-in freezers, ovens, and beer taps, and small wares, flat wares, and tabletop items, such as cutlery, plates, and glasses.

14.     Adams-Burch is a specialist in the business of furnishing and installing equipment and fixture packages for hotels, restaurants, resorts, prisons, stadiums, hospitals and other establishments catering to the public and located nationally and abroad.

15.     On July 6, 2018, Alter and Chekaldin caused DBGA to enter a Master Procurement and Sales Agreement with Adams-Burch (the "Agreement").  **Exhibit A**.  The Agreement governs all purchases from Adams Burch by the Defendants for use at the Dacha Establishments.

16.     Defendants agreed that Adams-Burch would be "paid via check, ACH, or electronic wire" (Section 2.1); that payments on larger equipment would be made at set scheduled intervals while payments on the small ware and flat ware items due within 15 days of the date of invoice, and that interest would accrue at the rate of 1.5% per month on all late payments.  Exhibit A, "Terms of Sale" Article 14.

17.     The Agreement further provides that "[i]n the event of any litigation… the prevailing party in such litigation shall be entitled to reasonable attorneys' fees (and, if applicable, court and other costs).  Exhibit A, Section 5.7.

18.     Defendants proceeded to order hundreds of thousands of dollars of foodservice equipment, small wares, flat wares, and table top items, from Adams-Burch for the Dacha Establishments.

19.     Adams-Burch began delivery of the orders, but raised concern when payments became routinely late and in some instances, never arrived.

20.     To convince Adams-Burch that payment was assured, in or around January 8, 2019, Alter directed Chekaldin to sign an ACH authorization allowing Adams-Burch to draw directly from Alter's "Eagle Bank" account on a monthly basis, and on May 14, 2019, Alter provided Adams-Burch with a "Credit Card Payment Authorization" allowing for charges to be made against a credit card bearing his name.[1]

---

[1] The ACH and Credit Card Authorizations are not attached as exhibits to this complaint as they contain sensitive banking information, and if necessary as future exhibits, will be filed under seal.

21.     On May 28, 2019, Adams-Burch issued statements reflecting overdue balances for foodservice equipment ($184,269.59); and for small wares, flat wares, and table top items in the amounts of $88,663.35 and $4,520.59.  *See* **Exhibit B**.

22.     Interest has been accruing on those outstanding balances at the rate of 1.5% per month—in some instances—for over six months.

23.     In May 2019, Adams-Burch issued a $23,614.05 charge against the credit card and a $4,520.59 draw from the ACH, in an effort to pay down the $93,183.94 balance owed for the small wares, flat wares, and table top items, ordered by and delivered to the Defendants.

24.     In response, Defendant Alter accused Adams-Burch of fraud, had the charges reversed, and revoked authorization for Adams-Burch to charge from the ACH and his credit card, leaving Adams-Burch with no means of receiving payment for the $277,453.53, which remains outstanding and which continues to accrue interest at the rate of 1.5% per month.

25.     It is clear, based on their acts, that each of the Defendants (1) fraudulently misrepresented that they would pay for products and services ordered from Adams-Burch with the express intent and purpose of securing hundreds of thousands of dollars in products and services from Adams-Burch despite having no intent on paying; and (2) that Alter and Chekaldin fraudulently induced Adams-Burch to continue delivery of products and services by issuing ACH and credit card authorizations to Adams-Burch, even though they intended to challenge any balances charged against those accounts by Adams-Burch.

26.     Those fraudulent and material misrepresentations—among others—were intentionally made by Alter and Chekaldin with the express purpose of inducing Adams-Burch to rely on the same, and Adams-Burch did reasonably rely to its detriment by continuing to deliver products and services to Defendants for which they now refuse to pay.

27.     As a result of Defendants' willful, knowing, purposeful, fraudulent and negligent acts and omissions, Adams-Burch has been caused to suffer severe and substantial financial damages for which the Defendants are liable.

## V.     CAUSES OF ACTION

28.     The following causes are alleged in the alternative, but only to the extent necessary.

## COUNT ONE
### Breach of Contract (Against DBGA)

29.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

30.     DBGA breached the terms of its Agreement with Adams-Burch by refusing to pay for the goods and services provided by Adams-Burch under the Agreement.

31.     DBGA's breach was either intentional or, alternatively, negligent.

32.     DBGA is liable to Adams-Burch for its direct and consequential damages and for reimbursement of Adams-Burch's costs and attorneys' fees incurred by having to bring this action.

33.     Adams-Burch has suffered direct and consequential damages by reason of DBGA breach in an amount to be proven at trial.

## COUNT TWO
### Fraud (Against All Defendants)

34.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

35.     Defendants made numerous material false statements to Adams-Burch and omissions of fact, as set forth in more detail in this Complaint, including, but not limited to,

misrepresentations concerning their intent to pay for the products and services ordered from Adams-Burch, and through the fraudulent ACH and credit authorizations that they purported to issue in order to assure Adams-Burch of such payment.

36. Those misrepresentations and omissions were material in that they caused Adams-Burch to continue performing its obligations under, and not to terminate, the Agreement, and because they prevented Adams-Burch from avoiding the damages it suffered as a result of Defendants' conduct, unreimbursed expenditures it made, and other costs it incurred.

37. The Defendants' fraudulent misrepresentations also deprived Adams-Burch of its right to receive payment because Defendants wrongfully and intentionally lulled Adams-Burch into believing that payment would be made, when in fact, Defendants were taking steps to prevent Adams-Burch from receiving payment.

38. Defendants unlawfully, wrongfully, and fraudulently secured and retained Adams-Burch's efforts and expenditures as Defendants' kitchen designer and provider of all accoutrements necessary to run the Dacha Establishments without Defendants paying Adams-Burch what Defendants had agreed to pay Adams-Burch in return. Defendants knowingly made the misrepresentations set forth in this Complaint to Adams-Burch, which were accompanied by fraud, ill-will, recklessness, wantonness, oppressiveness, and willful disregard of Adams-Burch's rights with evil motive or actual malice.

39. Defendants made the misrepresentations and omissions set forth above knowing them to be false, or they were aware that they did not know whether such misrepresentations were true or false, and Defendants made those misrepresentations and omissions with the intent to have Adams-Burch act in reliance on them.

40. Adams-Burch relied on those misrepresentations and its reliance was justified.

41.     By relying on the misrepresentations, Adams-Burch sustained significant damages in an amount to be proven at trial.

## COUNT THREE
### Negligent Misrepresentation and Constructive Fraud (Against All Defendants)

42.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

43.     Defendants made numerous false statements of material fact and withheld or failed to convey material information to Adams-Burch which Defendants had a duty to disclose to Adams-Burch, as set forth more fully in this Complaint.

44.     Adams-Burch reasonably relied on the false and withheld information provided by Defendants.

45.     These misrepresentations and omissions were material in that they caused Adams-Burch to continue performing its obligations under, and not to terminate, the Agreement, and because they prevented Adams-Burch from avoiding the damages it suffered as a result of Defendants' misconduct, including unreimbursed expenditures it made, and other costs it incurred.

46.     The Defendants' negligent misrepresentations also deprived Adams-Burch of its right to receive payment because Defendants negligently lulled Adams-Burch into believing that payment would occur, when in fact, Defendants were taking steps to prevent Adams-Burch from receiving payment.

47.     Due to their close working relationship on the Dacha Establishments for nearly a year, the Defendants knew that Adams-Burch relied on information that the Defendants were providing regarding all aspects of the Dacha Establishments.

48.     Defendants' actions have caused damages to Adams-Burch in an amount to be proven at trial.

## COUNT FOUR
### Unjust Enrichment (Against All Defendants)

49.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

50.     Adams-Burch conferred significant benefits on the Defendants by performing substantial work on the Dacha Establishments, delivering significant amounts of extremely expensive foodservice equipment and other accoutrements making the Dacha Establishments more valuable, and materially advancing the Dacha Establishments. Defendants accepted these benefits without objection or reservation.

51.     By failing to provide Adams-Burch with payment and other compensation earned by Adams-Burch for the work it performed for Defendants relating to the Dacha Establishments, Defendants have knowingly received or will knowingly receive a benefit at Adams-Burch's expense.

52.     Under the circumstances, it would be unjust, unfair, and inequitable for Defendants to retain the benefit without paying Adams-Burch for its value.

53.     Defendants' actions have caused Adams-Burch to incur damages in an amount to be proven at trial.

## COUNT FIVE
### Civil Conspiracy to Commit Fraud (Against All Defendants)

54.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

55.     Defendants agreed and sought to accomplish the object of unlawfully, wrongfully, and fraudulently securing Adams-Burch's efforts and expenditures as Defendants' designer,

builder, and supplier of all equipment and accoutrements for the Dacha Establishments without Defendants paying Adams-Burch what Defendants had agreed to pay Adams-Burch in return. Defendants' fraudulent misrepresentations are set forth in more detail throughout this Complaint.

56.     Defendants had a meeting of the minds on the object or course of action in fraudulently securing Adams-Burch's efforts and expenditures as Defendants' designer, builder, and supplier of all equipment and accoutrements for the Dacha Establishments without Defendants paying Adams-Burch what Defendants had agreed to pay Adams-Burch in return.

57.     Defendants committed one or more unlawful overt acts in unlawfully securing Adams-Burch's efforts and expenditures as Defendants' designer, builder, and supplier of all equipment and accoutrements for the Dacha Establishments without Defendants paying Adams-Burch what Defendants had agreed to pay Adams-Burch in return, including knowingly making the misrepresentations set forth in this Complaint.

58.     Adams-Burch has sustained damages as the proximate result of Defendants' conspiracy to unlawfully secure Adams-Burch's efforts and expenditures as Defendants' designer, builder, and supplier of all equipment and accoutrements for the Dacha Establishments without Defendants paying Adams-Burch what Defendants had agreed to pay Adams-Burch in return.

## COUNT SIX
## Aiding and Abetting Fraud (Against All Defendants)

59.     Adams-Burch incorporates by reference each of the preceding paragraphs as if fully rewritten herein.

60.     Defendants knowingly gave substantial assistance to each other in unlawfully securing Adams-Burch's efforts and expenditures as Defendants' designer, builder, and supplier of all equipment and accoutrements for the Dacha Establishments without Defendants paying

Adams-Burch what Defendants had agreed to pay Adams-Burch in return, including knowingly making the misrepresentations set forth in this Complaint.

61.     Each Defendant was aware of its role as part of the overall unlawful and fraudulent activity at the time that it knowingly provided its assistance to the other Defendants in unlawfully securing Adams-Burch's efforts and expenditures as Defendants' designer, builder, and supplier of all equipment and accoutrements for the Dacha Establishments without Defendants paying Adams-Burch what Defendants had agreed to pay Adams-Burch in return, including knowingly making the misrepresentations set forth in this Complaint.

## VI.     REQUEST FOR RELIEF

62.     WHEREFORE, Plaintiff, Adams-Burch LLC, respectfully prays that the Court will enter judgment as follows:

a.  For Plaintiff's actual damages, costs of suit, fees of experts, interest as required under the Agreement and as permitted by law both from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid;

b.  For the attorneys' fees, costs and expenses incurred by Plaintiff in prosecuting this action, as allowed by the Agreement;

c.  For all unpaid accounts receivable owed by Defendants to Plaintiff;

d.  For a constructive trust in Plaintiff's favor in an amount equal to Defendants' liabilities to Plaintiff;

e.  For punitive damages; and

f.   For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated this 6th day of June, 2019

/s/ Clarence Y. Lee
Clarence Y. Lee, Fed. Bar. No. 494290
clarence.lee@saul.com
Matthew J. Antonelli, Fed. Bar No. 1025587
matt.antonelli@saul.com
SAUL EWING ARNSTEIN & LEHR LLP
1919 Pennsylvania Avenue NW, Suite 550
Washington, D.C. 20006
(202) 295-6614 (T)
(202) 295-6721 (F)

*Attorney for Plaintiff*
ADAMS-BURCH, LLC